LOTTINGER, Judge.
This suit arises from an automobile accident. Petitioners are Lloyd Darville, Mrs. Ella Nolan Darville, and Mrs. Lee Ethel Todd Riley. Defendants are Associated Indemnity Corporation, Huey L. Martin and the Louisiana Department of Corrections. The Lower Court rendered judgment in favor of petitioners and against defendants and the defendant, Louisiana Department r>f Corrections has taken this appeal.
The accident occurred on September 30, 1972 at approximately 4:18 o’clock in the afternoon at the intersection of Louisiana Highway 30 and the private road leading out of the Louisiana Correctional Institute For Women at St. Gabriel. The accident involved a Volkswagon automobile driven by Mrs. Ella Nolan Darville, in which Mrs. Lee Ethel Riley was a passenger, and a truck driven by Huey L. Martin. At the time of the accident, Huey L. Martin was an inmate at the Department of Corrections of the State of Louisiana, however, was serving as a Trustee who stayed at the Louisiana Correctional Institute for Women and performed various duties for the institution. He was on his way to collect garbage in the truck he was driving when he ran out of the private road into the Louisiana Highway striking the Volkswa-gon on its side and overturning it causing *926 the injuries complained. The truck was owned by the institute.
Mrs. Lee Ethel Todd Riley and her husband dismissed their actions. The State of Louisiana through the Louisiana State Penitentiary and the Department of Corrections filed an Exception of No Cause of Action based on the concept of Governmental Immunity. ■ The Lowet Court overruled the Exception. After trial of the matter the Court found defendant, Associated Indemnity Corporation, the insurer of the Louisiana Department of Corrections, and the Department of Corrections liable because of the negligence of Huey L. Martin.
The limits of liability of the Associated Indemnity Corporation is $20,000.00 and Associated Indemnity is not involved in this appeal. The only appellant is the Board of Commissioners who complain first of the action of the Lower Court in overruling the Exception of Governmental Immunity.
In doing so the Lower Court cited Board of Commissioners of Port of New Orleans v. Splendour Shipping and Enterprises, Inc. et al., La., 273 So.2d 19. In that case the Board of Commissioners of the Port of New Orleans filed suit against Splendour Shipping & Enterprises Company, Inc. in damages. The defendant filed an answer and reconvened against the Board for damages. The Board then filed a petition styled “Exception of No Right of Action”, alleging that it is “an agency of the State of Louisiana and was, and is immune from suit in tort without the consent of the legislature; that no such consent has been given . . . ” The Board then prayed that the Reconventional Demand be dismissed. The Lower Court maintained the Exception and there was judgment dismissing the Reconventional Demand. The Supreme Court, in that case, after giving a history of the doctrine of Governmental Immunity, said:
“Here the Board sues, and when Splen-dour reconvenes on a claim arising from the same accident, the Board cries, “King’s X! You can’t sue me.” Not even the Board claims that its immunity is fair and just — only legal and traditional. The injustice may not be shocking to lawyers, accustomed to the frequent forfeiture of private advantage for public good. But when an unfair doctrine does not function for the public good, but only for the administrative convenience of a State agency, the court should do whatever it can to infuse justice in the relationship between the State agency and the private person.
Governmental responsibility is needed more today than ever. There is hardly any sector of private life and activity free from governmental intervention. The myriad State agencies and' their employees almost defy inventory, to say nothing of control by the people whom they purport to serve. It has not been the policy of the legislature, to permit employees of agencies to injure, intentionally or carelessly, private citizens. It is and should be the policy of the State, enforced through its courts, to require boards and agencies to act responsibly, or be subject to answer in court.”
The Supreme Court decision in the Splendour case was a split one, Justice Summers dissenting and assigning reasons and Justice McCaleb concurring in the result only, assigning written reasons. The sum and substance of the reasons of Justices Summers and McCaleb being based on the provisions of Section 35 of Article III of the Constitution of the year 1921 which, during the year 1960 was amended to read as follows:
“The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authoriza *927 tion by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant’s immunity both from suit and from liability
It is upon this constitutional provision, which the people of this State amended during the year 1960, that the decision in this case must be based. There is nothing in the Federal Constitution prohibiting Governmental Immunity, as a matter of fact, the eleventh amendment to the United States Constitution protects Governmental Immunity when it prohibits all suits in Federal Court by a citizen of one state against any of the several states themselves without the latter’s express or implied consent thereto. The holding of the Court in the Splendour case was to the effect that the State Board waived its Governmental Immunity when it filed suit against Splendour which then had a right to reconvene against the State. Such is not the case in the instant suit.
The provisions of Article III, Section 35 of the Constitution clearly implies Governmental Immunity when it gives the legislature power to waive it and proceeds to outline the procedure of waiving the immunity.
We, as a Court, are obligated to enforce and maintain the Constitution and laws of our State. Upon assuming the bench, each of us as individuals were sworn to uphold the Constitution and laws and we feel that the proper procedure for the plaintiff in this case to have taken would have been to secure legislative action so as to grant him the power and right to file this suit under the provisions of Article III, Section 35 of the Constitution.
For the reasons hereinabove assigned the judgment of the Lower Court will be amended so as to maintain an Exception of No Cause of Action filed by the Louisiana Department of Corrections and to dismiss the action as it bears against said department and, as amended, the judgment of the Lower Court will be affirmed. Appellees to pay costs of this appeal.
Amended and affirmed.
BAILES, J., concurs in the result.